[Cite as *State ex rel. Harborside of Cleveland Ltd. Partnership v. Indus. Comm.*, 2015-Ohio-5117.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Harborside of Cleveland<br>Limited Partnership, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 14AP-1012 |
| | : | |
| Industrial Commission of Ohio<br>and Pearlie E. Medley, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on December 10, 2015

*Ross, Brittain & Schonberg Co., LPA,* and *Michael J. Reidy* for relator.

*Michael DeWine*, Attorney General, and *Patsy A. Thomas* for respondent Industrial Commission of Ohio.

*Seaman & Associates, Michael I. Madden*, and *Shaun H. Kedir* for respondent Pearlie E. Medley.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, P.J.

{¶ 1} Relator, Harborside of Cleveland Limited Partnership ("relator"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that granted an award of permanent total disability ("PTD") compensation to respondent,

Pearlie E. Medley ("claimant"), and deny claimant's request or, in the alternative, to reconsider claimant's entitlement to PTD compensation after addressing relator's argument that claimant sustained an intervening injury that broke the causal connection between the allowed conditions in her claim and her disability.

{¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended that this court grant relator's request for a writ of mandamus. Claimant and the commission filed objections to the magistrate's decision; however, the commission withdrew its objections.

{¶ 3} Claimant presents the following four objections: (1) the magistrate erred when she found that the commission abused its discretion in failing to address the issue of intervening injury and proximate cause, (2) the magistrate erred in comparing this case to *State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, as that case was decided on different facts and involved different arguments, (3) the magistrate misinterpreted the holding in *Sheppard* and improperly expanded the law, and (4) the magistrate erred when she failed to acknowledge in the restatement of facts that Dr. Scott E. Singer did not change his opinion that claimant's PTD was caused by her allowed conditions after being presented with evidence of potential pre-existing and intervening events during his deposition.

{¶ 4} The main thrust of claimant's four objections is that the commission's staff hearing officer ("SHO") adequately addressed the issue of intervening injury and proximate cause, consistent with *Sheppard*, when he stated that claimant was "unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed conditions." (Emphasis added.) Claimant contends that, by stating "soley as a result of," the SHO necessarily found there was no intervening injury. We disagree. The Supreme Court of Ohio in *Sheppard* makes clear that an SHO's failure to address an employer's critical argument that an intervening injury was the actual cause of a claimant's condition is a clear mistake of law justifying the commission to exercise continuing jurisdiction. Although claimant points out that, in *Sheppard*, the SHO made no finding as to proximate cause whatsoever, whereas here the SHO did make

a finding as to proximate cause, we are not convinced that the SHO considered claimant's intervening injury in making that probable cause determination. Given the Supreme Court's clear and definitive opinion that the failure to consider an intervening injury is a mistake of law, we do not believe we should be left to guess whether the SHO made a mistake of law in this case. The better course under these circumstances is to grant relator's request for a writ of mandamus and return the matter to the commission for further consideration. Therefore, we overrule claimant's objections.

{¶ 5} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of claimant's objections, we overrule the objections and adopt the magistrate's findings of fact and conclusions of law. Relator's writ of mandamus is granted.

*Objections overruled; writ of mandamus granted.*

SADLER, J., concurs.
BRUNNER, J., dissents.

BRUNNER, J., dissenting.

{¶ 6} I respectfully dissent from the decision of the majority. Claimant's suffered work-related injury of January 14, 2001 was allowed for contusions of her back and lumbar area and her left wrist and hand, a herniated disc at L3-4, aggravation of pre-existing lumbar canal stenosis, and major depression. She had slipped and fallen while leaving her work as a registered nurse at Harborside. She did not return to work following her injury. Following her application for permanent total disability ("PTD") compensation, Jamie B. Lichstein, Psy.D., assessed a 31 percent whole person impairment and found that claimant was permanently and totally disabled solely as a result of the allowed psychological condition, major depression. In addition, Scott E. Singer, M.D., examined claimant and concluded that her allowed physical conditions had achieved maximum medical improvement. Dr. Singer assessed a 13 percent whole person impairment and concluded that she could not perform sustained remunerative employment solely as a result of the allowed physical conditions.

{¶ 7} However, claimant sustained injuries unrelated to her employment, both before and after January 14, 2001. She sustained an assault in 1979, a motor vehicle

accident in April 1990, a fall in February 1997, and two further motor vehicle accidents in 1998 and 2005. In a lawsuit resulting from the 2005 accident, claimant testified that her back pain increased. At her deposition, Dr. Lichstein did not say with any degree of certainty that the 2005 car accident would have altered her opinion, as she had been treating claimant's depression before the accident. Dr. Singer allowed that any intervening injuries would be pertinent, particularly in view of claimant's statement that she never returned to her "baseline" following the 2005 accident.

{¶ 8} Relying on the reports of Drs. Lichstein and Singer, however, the commission's staff hearing officer ("SHO") awarded PTD compensation to claimant and did not discuss relator's contention that claimant had sustained an intervening injury. The magistrate found that the SHO abused his discretion insofar as he failed to address relator's argument that claimant had sustained an intervening injury, and decided that this court should issue a writ of mandamus.

{¶ 9} In order for the court to issue a writ of mandamus, relator must show that it has a clear legal right to the relief sought and that the commission has a clear legal duty to provide that relief. *State ex rel. AutoZone, Inc. v. Indus. Comm.*, 117 Ohio St.3d 186, 2008-Ohio-541, ¶ 14. " 'The appropriate standard guiding our review is whether there is "some evidence" in the record to support the commission's decision. * * * If so, then the commission will not be deemed to have abused its discretion, and the granting of a writ of mandamus to correct an abuse of discretion is not warranted.' " *Id.*, *State ex rel. Avalon Precision Casting Co. v. Indus. Comm.*, 109 Ohio St.3d 237, 2006-Ohio-2287, ¶ 9, quoting *State ex rel. Secreto v. Indus. Comm.*, 80 Ohio St.3d 581, 582-83 (1997).

{¶ 10} Beyond the deposition testimony, relator did not adduce expert or medical evidence in support of its argument that claimant had sustained an intervening injury. I would sustain claimant's first objection to the magistrate's conclusion that the SHO's order did not encompass relator's suggestion of an intervening injury. The SHO expressly stated that claimant's disability was "solely as a result of the medical impairment caused by the allowed conditions." The commission does not have to enumerate all the evidence it considered, but only that on which it has relied to reach its decision. *State ex rel. DeMint v. Indus. Comm.*, 49 Ohio St.3d 19, 20 (1990). Since the commission listed the evidence on which its order was based, the presumption of regularity attaches to its

proceedings and insofar as it indeed considered all the evidence before it.  *State ex rel. Lovell v. Indus. Comm.*, 74 Ohio St.3d 250, 253-54 (1996).

{¶ 11} Furthermore, the mere presence of non-allowed conditions does not automatically bar PTD compensation.  *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452, 458 (1993).  The reports of Drs. Lichstein and Singer adequately supported the finding of PTD and also the scenario that "the nonindustrial disability may arise *after* the industrial injury has already forced the claimant from his or her job."  (Emphasis sic.) *Id.* at 455.  The commission could fairly conclude that claimant had met her burden of showing that the allowed conditions independently caused her disability, and did not combine with a non-allowed condition to produce the disability.  *See State ex rel. Bradley v. Indus. Comm.*, 77 Ohio St.3d 239, 242 (1997).

{¶ 12} Further supporting the SHO's determination was Dr. Singer's demurrer, when he was asked at his deposition whether claimant's other accidents and injuries changed his opinion.  Dr. Singer, who gave his report on behalf of the Ohio Bureau of Workers' Compensation, concurred with claimant's expert that she was unable to return to work as a result of her employment-related injuries.

{¶ 13} As relator did fail to sway Dr. Singer's opinion attributing PTD solely to claimant's work-related injury, his opinion supported the commission's determination, and I would sustain claimant's fourth objection to the magistrate's decision, along with the first.  The commission's order granting PTD compensation was supported by some evidence, in the form and substance of Dr. Singer's opinion (along with Dr. Lichstein's), and I would therefore find no abuse of discretion.

{¶ 14} I agree with claimant that the magistrate's decision was based on an unwarranted extension of the ruling in *State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904.  In *Sheppard*, the commission determined that the SHO had failed to address the employer's critical argument that an intervening, non-work-related back injury was the actual cause of Sheppard's condition. We denied Sheppard's complaint for a writ of mandamus, which alleged that the commission should not have exercised continuing jurisdiction and denied PTD compensation, and the Supreme Court of Ohio affirmed.

{¶ 15} Summarizing the applicable law, the Supreme Court stated:

> Permanent total disability is defined as the inability to perform sustained remunerative employment as a result of the allowed conditions in the claim. Ohio Adm.Code 4121-3-34(B)(1); *State ex rel. Nissin Brake Ohio, Inc. v. Indus. Comm.*, 127 Ohio St.3d 385, 2010-Ohio-6135, 939 N.E.2d 1242, ¶ 12. The burden is on the claimant to establish that the disability is permanent and that the inability to work is causally related to the allowed conditions. Ohio Adm.Code 4121–3–34(D)(3)(a); *State ex rel. LTV Steel Co. v. Indus. Comm.*, 65 Ohio St.3d 22, 23, 599 N.E.2d 265 (1992). An intervening injury is one that is not related to the allowed claim and breaks the causal connection between the industrial injury and the disability. *Cascone v. Herb Kay Co.*, 6 Ohio St.3d 155, 451 N.E.2d 815 (1983). An intervening injury could eliminate the industrial injury as the proximate cause of the inability to work and thus destroy the claimant's eligibility for permanent-total-disability compensation.

*Id.* at ¶ 16.   The Supreme Court further stated, "[l]ike voluntary retirement or abandonment of employment, an intervening injury is critical to the issue of proximate cause and to determining whether the claimant is eligible for permanent-total-disability compensation."  *Id.* at ¶ 20.  Ohio Adm.Code 4121-3-34(D)(1)(h) and (3)(e) require the hearing officer to determine whether the claimant established proximate cause.  The SHO's order clearly evinces his consideration of the issue, as it expressly states that based on the reports of Drs. Lichstein and Singer, claimant "is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed conditions."

{¶ 16} The substantial holding in *Sheppard* is that "the commission did not abuse its discretion when it determined that the hearing officer's failure to address the intervening-injury argument was a mistake of law that justified the commission's reopening the claim to examine the issue." *Id.* at ¶ 22.  The Supreme Court did not mandate that the commission specifically expound any and all suggestions of an intervening injury which may be raised in the proceedings before it.  We cannot conclude that the commission failed to examine all relevant facets of claimant's eligibility for compensation,  including relator's intervening injury argument.   Our limited review

discloses no abuse of discretion by the commission, and accordingly, we sustain claimant's second and third objections to the magistrate's decision.

{¶ 17} Though relator argues that claimant failed to disclose the 2005 accident, and Dr. Singer did not review medical records of any subsequent treatment, the record evinces no intent deliberately to mislead Dr. Singer or anyone else concerning the accident. The commission nevertheless had evidence including the opinions of Drs. Lichstein and Singer to support its finding of PTD based solely on the allowed conditions. As a result of an independent review, pursuant to Civ.R. 53, I would sustain each of claimant's objections to the magistrate's decision and deny relator's request for a writ of mandamus.

_____

[Cite as *State ex rel. Harborside of Cleveland Ltd. Partnership v. Indus. Comm.*, 2015-Ohio-5117.]

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. | : | |
| Harborside of Cleveland | | |
| Limited Partnership, | : | |
| | | |
| Relator, | : | |
| | | |
| v. | : | No. 14AP-1012 |
| | | |
| Industrial Commission of Ohio | : | (REGULAR CALENDAR) |
| and Pearlie E. Medley, | | |
| | : | |
| Respondents. | | |
| | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

**Rendered on June 23, 2015**

---

*Ross, Brittain & Schonberg Co., LPA, Michael J. Riedy,* **for relator.**

*Seaman & Associates, Michael I. Madden,* **for respondent Pearlie Medley.**

*Michael DeWine*, **Attorney General, and** *Patsy A. Thomas,* **for respondent Industrial Commission of Ohio.**

---

### IN MANDAMUS

{¶ 18} Relator, Harborside of Cleveland Limited Partnership, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which granted an award of permanent total disability ("PTD") compensation to respondent, Pearlie E. Medley ("claimant"), and deny claimant's request or, in the alternative, to reconsider

claimant's entitlement to PTD compensation after addressing relator's argument that claimant sustained an intervening injury which broke the causal connection between the allowed conditions in her claim and her disability.

<u>Findings of Fact</u>:

{¶ 19} 1. Claimant sustained a work-related injury on January 14, 2001 and her workers' compensation claim has been allowed for the following conditions:

> Contusion of lumbar area; contusion left wrist; contusion left hand; contusion of back; herniated disc at L3-4; aggravation of pre-existing lumbar canal stenosis; major depression.

{¶ 20} 2. Claimant's claim has been specifically disallowed for the following conditions:  "cervical sprain; aggravation of cervical stenosis."

{¶ 21} 3. Claimant filed her application for PTD compensation on September 27, 2013.

{¶ 22} 4. On February 11, 2014, Jamie B. Lichstein, PSY.D., examined claimant for the allowed psychological condition in her claim.  In support of her application for PTD compensation, claimant submitted the report of Dr. Lichstein who noted the history of her present condition, stating:

> The claimant was injured during the course of her work as a registered nurse for Harborside Healthcare Corporation. The claimant was exiting the building when she slipped and fell o nice. She sustained back, neck, and wrist injuries. Ms. Murray became agitated at this point in the interview and she explained that her claim has only been recognized for her back and wrist because she "only mentioned" her "neck in the emergency room." She has received ongoing medical care since the time of her initial injury.
>
> Ms. Murray has also been symptomatic (by her report) for depression since early on as well. Ms. Murray explained that she though she was "handling it" and "managing" because she was a "nurse." Although she did not recall the exact year; the record indicates that she sought treatment for depression in 2003. She has not had surgery since the injury. The most severe physical pain was reported to be in her "lower back" and she added that the pain "fans out down my extremities." Ms. Murray reported that she believes her depression is not the result of her pain; rather, she sees her depression as her "inability to do." Ms. Murray explained, "The loss of my career." She again stated, "It's not the pain. It's the loss of abilities." She reported that she has not ever returned to

work since the date of injury. She stated, "I was not ever able to and I was not ever released to." She went on to report, "My doctors said I couldn't do it. I wasn't released to."

{¶ 23} Ultimately, Dr. Lichstein assessed a 31 percent whole person impairment and found that claimant was permanently and totally disabled solely as a result of the allowed psychological conditions, stating:

> She has moderate functional limitations due to the allowed psychological condition of Major Depression. Ms. Murray would be unable to focus and concentrate in an environment that expected attention to detail and sustained concentration. Ms. Murray experiences crying spells, low energy, and a cognitive focus on her loss of abilities. These symptoms are likely to distract her from the task at hand and make it difficult for her [to] engage socially with others. Her coping skills for tolerating stress are quite reduced. In response to her injury, limitations, and strained circumstances, Ms. Murray has withdrawn, and she does not even attempt to get out and engage with others. There is a considerable amount of shame associated with her current status. Ms. Murray was proud of her career and her ability to be self-sufficient. She has become resentful that she can no longer work and continue to take care of others. In many ways she is struggling to take care of herself. She spends considerable time focusing on her ongoing pain and impairment, and she has little energy or motivation. Interpersonally, Ms. Murray is irritable with others and she continues to experience significant sadness to the point of suicidal ideation at times. She would be unable to tolerate a stressful environment of any kind.

{¶ 24} 5. Claimant was also examined by Scott E. Singer, M.D. In his March 12, 2014 report, Dr. Singer identified the allowed physical conditions in claimant's claim and noted the following under her past medical history:

> In addition to the above, the injured worker reported that her medical history is significant for sarcoidosis, arthritis in her knees and hyperparathyroidism. Her surgical history is significant for bilateral knee surgeries and a lung biopsy. No other pertinent positive medical history was reported.

{¶ 25} Dr. Singer identified the medical records which he reviewed, provided his physical findings upon examination, and concluded that claimant's allowed physical conditions had reached maximum medical improvement ("MMI"), assessed a 13 percent

whole person impairment, and ultimately concluded that claimant was incapable of performing some sustained remunerative employment solely as a result of the allowed physical conditions in her claim.

{¶ 26} 6. Relator deposed both Drs. Lichstein and Singer to inquire whether they were aware that claimant had been involved in non-work related accidents that occurred both before and after her January 14, 2001 industrial injury. Specifically, relator presented evidence which claimant does not contest, that she was assaulted in 1979, involved in a motor vehicle accident in April 1990, fell in her driveway in February 1997, was involved in a second motor vehicle accident in 1998, and a third motor vehicle accident in July 2005. During the depositions of these two doctors, both Drs. Lichstein and Singer indicated that claimant had not informed them that she had sustained any other injuries other than the work-related injury for which they examined her. Apparently, claimant was involved in a lawsuit for the 2005 motor vehicle accident and essentially testified that her back pain increased after this motor vehicle accident and remained increased (i.e., never returned to baseline). (Tr. 354.)

{¶ 27} 7. When Dr. Lichstein was asked whether this new information may have changed her prior opinion concerning PTD, Dr. Lichstein stated:

> Its hard to say. I mean, the one thing I will say is that all of the medical evidence that occurred prior to the work-related injury. She was working successfully and, by her report, engaging in her church, in her community with her children, with her grandchildren.
>
> So most -- those medical records most likely would not have affected my opinion on her depression because she wasn't even in the report that we did in February of this year. She was not reporting symptoms prior to the work-related injury. You know, how to tease (sic) out a car accident that occurred after she already had sought treatment for depression for the work-related injury -- you know, would it have changed my mind in February? I don't know. I don't think so. I mean, I think it might have. As she said in her deposition, she was referring to her physical symptoms. It might have exacerbated her emotional symptoms as well. But she was already reporting that she was depressed at that time. But at least she was reporting to me in February of this year and the record indicates that she sought treatment for a mood disorder earlier than 2005.

{¶ 28} 8. Dr. Singer was also deposed and acknowledged claimant had not told him about these other injuries. When asked whether or not this new medical evidence was relevant to the question of whether or not she was permanently and totally disabled, Dr. Singer stated that it was. Further, when asked whether or not these other injuries were pertinent, Dr. Singer stated:

> Well, they are pertinent, I mean, especially if you're making a determination on someone's ability to work, making that determination based on a specific injury or claim-related conditions. Her history of what might have happened since then or any intervening injuries would be pertinent.

(Tr. 23.)

{¶ 29} Dr. Singer found it particularly relevant that claimant testified that "she never got back to her baseline after the accident." (Tr. 26.)

{¶ 30} 9. Claimant's application for PTD compensation was heard before a staff hearing officer ("SHO") on September 4, 2014. The SHO determined that claimant was entitled to PTD compensation and relied exclusively on the reports of Drs. Lichstein and Singer. Because the SHO determined that claimant was unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed conditions, the SHO did not address the non-medical disability factors pursuant to *State ex rel. Speelman v. Indus. Comm.*, 73 Ohio App.3d 757 (10th Dist.1992). Further, the SHO did not discuss relator's contention that claimant had sustained an intervening injury.

{¶ 31} 10. Relator filed a request for reconsideration which was denied by order of the commission mailed October 17, 2014.

{¶ 32} 11. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 33} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 34} Finding that the Supreme Court of Ohio's decision in *State ex rel. Sheppard v. Indus. Comm. of Ohio,* 139 Ohio St.3d 223, 2014-Ohio-1755 applies, it is this magistrate's decision that this court should issue a writ of mandamus.

{¶ 35} Robert L. Sheppard sustained a work-related injury on October 9, 1997, and his claim was allowed for lumbosacral sprain and a herniated disc. Sheppard also suffered from degenerative disc disease which was not related to the industrial injury. In February 2002, Sheppard reinjured his back in an incident that was not work-related. In 2004, when Sheppard retired, an MRI indicated that his herniated disc had resolved.

{¶ 36} In 2006, Sheppard filed a motion to reactivate his claim to pay for further medical treatment. The commission determined the treatment was related to the degenerative disc disease, a non-allowed condition, and denied the motion. On March 5, 2010, Sheppard filed an application for PTD compensation and, following a hearing, an SHO granted the application based on the opinion of Dr. Richard M. Ward. Although the hearing officer identified Sheppard's non-medical disability factors, the SHO did not analyze their effect on his ability to work.

{¶ 37} Sheppard's former employer filed a request for reconsideration arguing that the SHO's order contained a clear mistake of law because the SHO failed to address the employer's critical argument regarding the 2002 intervening injury. Following a hearing, the commission agreed that the SHO order contained a clear mistake of law; specifically, the SHO's failure to address the employer's critical argument alleging that the 2002 intervening injury was the actual cause of Sheppard's condition, and ultimately denied Sheppard's request for PTD compensation.

{¶ 38} Sheppard filed a mandamus action in this court alleging the commission abused its discretion when it exercised continuing jurisdiction and denied his application for PTD compensation. This court overruled Sheppard's objections to the magistrate's decision and found the SHO's failure to address an issue raise by the employer constitutes a mistake of law sufficient for the commission to invoke its continuing jurisdiction. Sheppard appealed this court's decision.

{¶ 39} The Supreme Court of Ohio upheld this court's decision finding the commission did not abuse its discretion when it exercised its continuing jurisdiction because the SHO's failure to address the intervening injury argument was a mistake of law that justified the commission's reopening of the claim. Specifically, the court stated:

The court of appeals relied on *Mackey,* 2010-Ohio-3522, 2010 WL 2979022, as authority that a hearing officer's failure to address an issue raised by an employer constitutes a mistake of law sufficient for the commission to invoke its continuing jurisdiction. In Mackey, the hearing officer awarded the claimant compensation for permanent total disability, but the order did not address the employer's argument that the claimant had voluntarily retired. Mackey's employer moved for reconsideration, alleging that the hearing officer had made a clear mistake of law when he failed to address the issue of voluntary abandonment of employment. The commission agreed. Upon reconsideration, the commission found that Mackey had voluntarily retired and was ineligible for permanent-total-disability compensation.

We affirmed. 130 Ohio St.3d 108, 2011-Ohio-4910, 955 N.E.2d 1005. We held that because the issue of voluntary abandonment was critical to Mackey's eligibility for an award, the hearing officer's failure to address the issue was a clear mistake of law, and the commission did not abuse its discretion when it reopened the issue of Mackey's eligibility for compensation in order to consider the effect of Mackey's retirement. *Id.,* ¶ 5.

Sheppard argues that *Mackey* is distinguishable because it involves voluntary abandonment, an issue that Ohio Adm.Code 4121-3-34(D)(1)(d) requires a hearing officer to address, whereas there is no similar requirement that a hearing officer address an argument involving an intervening injury.

Sheppard's narrow focus on the particular issue of voluntary retirement fails to acknowledge other factors that the commission must consider in evaluating proximate cause and ultimately, the claimant's eligibility for benefits. Like voluntary retirement or abandonment of employment, an intervening injury is critical to the issue of proximate cause and to determining whether the claimant is eligible for permanent-total-disability compensation. It is true that the commission's administrative guidelines expressly require the hearing officer to address the issue of voluntary abandonment, Ohio Adm.Code 4121-3-34(D)(1)(d), but the Code also requires the hearing officer to specifically determine whether the claimant established proximate cause. Ohio Adm.Code 4121-3-34(D)(1)(h) and (3)(e).

*Id.* at ¶ 17-20.

{¶ 40} Both the commission and claimant argue that the SHO sufficiently addressed and rejected relator's argument that intervening injuries broke the causal connection between claimant's work-related allowed conditions and any disability when the SHO indicated that claimant was "unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed conditions." They argue that no further explanation was necessary.

{¶ 41} The magistrate rejects this argument noting this same argument had also been made in *Sheppard.* Contrary to their argument, it is not clear that the SHO addressed and rejected relator's argument concerning intervening injury. Claimant, a nurse, testified that, after the 2005 injury, she never returned to baseline. This 2005 injury occurred after the date of injury in her claim and claimant never provided the examining physicians with any information concerning her diagnosis or treatment. Relator raised this argument and the SHO did not address it.

{¶ 42} In the present case, there is no doubt that relator raised the issue that claimant had sustained an intervening injury which she had not reported to the examining physicians and the SHO failed to address this issue when the SHO granted claimant's application for PTD compensation. Like voluntary abandonment, an intervening injury is critical to the issue of proximate cause and to determining whether claimant is eligible for PTD compensation. The magistrate finds that the SHO's failure to address the intervening injury argument constitutes an abuse of discretion and this court should issue a writ of mandamus ordering the commission to vacate its order awarding claimant PTD compensation and requiring the commission to reconsider the matter in a manner consistent with this decision.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).