[Cite as *State ex rel. Kelly Servs., Inc. v. McGrue*, 2021-Ohio-1938.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Kelly Services, Inc. | : | |
| Relator, | : | No. 19AP-362 |
| v. | : | (REGULAR CALENDAR) |
| Charles McGrue, IV et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on June 8, 2021

*Frost Brown Todd LLC, Noel C. Shepard,* and *Steven M. Tolbert, Jr.,* for relator.

*Plevin & Gallucci Co., L.P.A., Frank L. Gallucci, III,* and *Bradley Elzeer, II,* and *Paul W. Flowers Co., L.P.A., Paul W. Flowers,* and *Louis E. Grube,* for respondent Charles McGrue, IV.

*Dave Yost,* Attorney General, *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

BEATTY BLUNT, J.

{¶ 1} Relator, Kelly Services, Inc., filed this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order exercising jurisdiction and awarding temporary total disability compensation to respondent Charles McGrue, IV.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court. The magistrate issued the appended decision, including findings of fact and conclusions of law, recommending this court deny

relator's request for a writ of mandamus.

{¶ 3}    No objections have been filed to the magistrate's decision.

{¶ 4}    We have found no error of law or other defect on the face of the magistrate's decision.  Therefore, we adopt the magistrate's decision as our own, including the findings of fact and the conclusions of law therein. In accordance with the magistrate's decision, we conclude that the commission properly exercised its jurisdiction, and did not abuse its discretion in denying the staff hearing officer's order and entering a new order concluding that temporary total disability payments to respondent McGrue should continue, as its order was authorized by law and supported by evidence. Relator's requested writ of mandamus is accordingly denied.

*Writ of mandamus denied.*

MENTEL, and NELSON, JJ., concur.

NELSON, J., retired, of the First Appellate District, assigned to active duty under authority of Ohio Constitution, Article IV, Section 6(C).

_____

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Kelly Services, Inc.                    :

     Relator,                                           :
                                                    No. 19AP-362
v.                                                  :
                                               (REGULAR CALENDAR)
Charles McGrue IV et al.,
                                        :

     Respondents.                                      :

                                              :

M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 22, 2021

*Frost Brown Todd LLC, Noel C. Shepard,* and *Steven M. Tolbert, Jr.,* for relator.

*Plevin & Gallucci Co., L.P.A., Frank L. Gallucci, III,* and *Bradley Elzeer, II,* and *Paul W. Flowers Co., L.P.A., Paul W. Flowers,* and *Louis E. Grube,* for respondent Charles McGrue, IV.

*Dave Yost,* Attorney General, *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON RESPONDENTS' MOTIONS

**{¶ 5}** Relator, Kelly Services, Inc., brings this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order exercising continuing jurisdiction and awarding temporary total disability ("TTD") compensation to respondent Charles McGrue, IV.

Findings of Fact:

{¶ 6}   1. Kelly Services participates in the Ohio Workers' Compensation program as a self-insured employer.

{¶ 7}   2. McGrue sustained an injury on March 20, 2018 in the course and scope of his employment with Kelly Services.

{¶ 8}   3. McGrue's claim was allowed by the Ohio Bureau of Workers' Compensation ("BWC") for "laceration with foreign body left arm."  (Stip. at 39.)  The ensuing emergency room report described a six to seven-inch by two and one half to three-inch-wide laceration of McGrue's dorsal left forearm with damage to muscle tissue.  (Stip. at 2-3.)

{¶ 9}   4. The First Report of Injury filed with BWC indicated that McGrue was working to clean metal shavings from a machine he was operating, believing the machine to be in the off position, when the machine actuated and trapped his hand and arm.

{¶ 10}   5. On March 21, 2018, McGrue's treating physician, Kevin J. Malone, M.D., signed a BWC medical form indicating that McGrue was not released to return to work and "just had surgery and will need to rehab to ensure safe return to work."  (Stip. at 8.)

{¶ 11}   6. On March 27, 2018, Dr. Malone produced a further form indicating that McGrue could return to work with restrictions including no use of the left hand.  (Stip. at 15.)  The physician's report further noted as follows:  "Injured worker will benefit from occupational therapy.  His work ability will be re-addressed at his next appointment on 04/17/2018."  (Stip. at 16.)

{¶ 12}   7. Kelly Services then made a limited-duty written job offer to McGrue on April 3, 2018.  This acknowledged McGrue's work restrictions as expressed by Dr. Malone and offered a light-duty assignment as a volunteer at the Salvation Army Family Store working a 10:00 a.m. to 6:30 p.m. shift Monday through Friday stocking shelves and avoiding any use of the left hand.

{¶ 13}   8. Although there is nothing in the record to establish his specific response, McGrue appears to have verbally rejected this light-duty job offer, and Kelly Services responded on April 4, 2018 with a letter acknowledging this rejection:

> This letter is to confirm that you were offered an assignment within your restrictions given by Dr. Kevin J. Malone MD which state Restricted duty, 1 hand only, No use of left hand and are dated effective as of 3/22/2018, Restrictions given

from appointment on 3/27/2018. This position was offered to you by Robin Eglin at the Kelly Services local branch in 4730. The purpose of this letter is to confirm that you have declined to accept this job offer due to being instructed to do so by your doctor and attorney Frank Gallucci.

(Stip. at 18.)

{¶ 14} 9. McGrue returned to visit Dr. Malone for follow-up on April 17, 2018. Dr. Malone produced the following report after this visit:

History of Present Illness
Charles returns for postoperative follow-up of his left forearm extensor muscle belly injury. He is now approximately one month out from surgery. His pain is well-controlled. He is progressing in therapy. He continues to wear a protective splint. He has no other new complaints.

Examination reveals that the surgical and traumatic wounds are well-healed. He does have some scarring in the proximal forearm with lack of overall skin compliance and elasticity. He demonstrates essentially full MP and IP joint extension with a trace extensor lag at the ring finger MP joint. He has MP joint extension lightness but demonstrates full IP joint flexion. He reports normal subjective sensation of the hand.

Impression: Left dorsal forearm traumatic wound with extensor muscle injury.

Plan: He should continue with his therapy following the protocol for rehabilitation of this type of injury. I have been provided information regarding a potential alternative job option for him that will allow him to work right-handed only. I believe that this is appropriate. It is important that his therapy schedule is still followed. He will return to see me in approximately 4 weeks for repeat clinical examination.

(Stip. at 19.)

{¶ 15} 10. In response to an inquiry from McGrue's counsel, Dr. Malone assessed the light-duty job offer made by Kelly Services and opined that it was "a valid job offer" within McGrue's restrictions with the qualification that McGrue "still needs to attend therapy session or cannot accept work position." (Stip. at 23.)

{¶ 16} 11. On April 25, 2018, Dr. Malone completed a BWC Medco-14 form stating that McGrue would continue therapy for rehabilitation. (Stip. at 22.) This opinion stated

that McGrue "will need to attend therapy sessions and follow-up appointments or [he] cannot accept position." (Stip. at 21.)

{¶ 17} 12. Counsel for McGrue informed Kelly Services by letter that McGrue would only be able to accept the light-duty job offer if the proposed employer would accommodate McGrue's need to attend post-operative therapy sessions in the morning. (Stip. at 24.) McGrue's counsel requested that Kelly Services provide an amended job offer specifying appropriate working hours.

{¶ 18} 13. Kelly Services having terminated TTD payments, McGrue filed on May 25, 2018 an allegation with BWC that Kelly Services had improperly terminated TTD. (Stip. at 25.) BWC granted McGrue's complaint. (Stip. at 26.) BWC's self-insured auditor noted that "one of the conditions of a good faith job offer is that the claimant's physician has to agree/approve the offer." (Stip. at 26.)

{¶ 19} 14. On August 18, 2018, a district hearing officer ("DHO") granted McGrue's motion for TTD from April 18 through July 23, 2018. (Stip. at 39.) The DHO determined that Dr. Malone had notified Kelly Services that McGrue could not accept the proposed light-duty job offer unless accommodations were made to allow McGrue to attend physical therapy sessions in the morning. The DHO further noted that Kelly Services had not modified its initial light-duty job offer in accordance with Dr. Malone's limitation addressing physical therapy.

{¶ 20} 15. Dr. Malone submitted a further Medco-14 on October 18, 2018 indicating that McGrue was not released to work at this time. (Stip. at 46.)

{¶ 21} 16. Kelly Services further appealed, and on October 20, 2018, a staff hearing officer ("SHO") vacated the DHO's order granting closed-period TTD. (Stip. at 58.) The SHO established McGrue's average weekly wage at $397.37 and granted TTD only for the closed period of April 18 through April 25, 2018. (Stip. at 58.) The SHO determined that Dr. Malone had insufficiently specified any schedule constraints that would conflict with the proposed working schedule in the light-duty job offer, and that there was therefore no evidence of conflict between McGrue's therapy schedule and the proposed work schedule. (Stip. at 59.)

{¶ 22} 17. McGrue appealed the SHO order, and the commission refused the appeal by order dated November 8, 2018. (Stip. at 63.)

{¶ 23} 18. McGrue filed a motion for reconsideration and on February 28, 2019, the commission issued its order finding that the SHO order contained a clear mistake of law that would support continuing jurisdiction. (Stip. at 90.) The commission then proceeded to consider in the same order the merits of McGrue's appeal of the SHO's order denying TTD.

{¶ 24} 19. At the hearing before the commission, McGrue submitted his occupational therapy appointment schedule, which had not been reviewed by the DHO and SHO at previous levels of review. The commission considered this additional evidence and concluded as follows:

> Of the 23 therapy visits that took place, at least 19 of them conflicted directly with the 10:00 a.m. start time proposed by the Employer. Therefore, the light duty position offered by the Employer did not meet the restrictions imposed by Dr. Malone, and did not qualify as a valid "written job offer of suitable employment" pursuant to [*State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.,* 90 Ohio St.3d 428 (2000)] and Ohio Adm.Code 4121-3-32(A)(3). Accordingly, temporary total disability compensation is not barred, and is hereby reinstated as of 04/18/2018. Temporary total disability compensation shall be [ ] paid from 04/18/2018 through 11/24/2018, and to continue upon submission of supporting medical evidence.

(Stip. at 92.)

{¶ 25} 20. The commission determined that continuing jurisdiction was justified in that the SHO had failed to consider the average weekly wage correction proposed by McGrue, from the amount set by the DHO.

{¶ 26} 21. In its determination on the merits of the appeal, the commission set the average weekly wage at $512.92.

{¶ 27} 22. Kelly Services filed its complaint in mandamus in this court on June 3, 2019.

Discussion and Conclusions of Law:

{¶ 28} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of

mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 29} Kelly Services proposes two abuses of discretion by the commission: first, that the commission did not have before it a clear error of law in the SHO's order that would support continuing jurisdiction, and second, that there was no evidence that Kelly Services had failed to make a job offer in good faith of suitable employment within McGrue's limitations as defined by Dr. Malone.

{¶ 30} The commission's authority to exercise continuing jurisdiction over former findings and orders is limited by R.C. 4123.52(A). The commission may exercise continuing jurisdiction only when the matter presents "(1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by inferior tribunal." *State ex rel. Royal v. Indus. Comm.,* 95 Ohio St.3d 97 (2002). The presence of one of these prerequisites must be clearly articulated in the commission's order that exercises continuing jurisdiction. *State ex rel. Gobich v. Indus. Comm.,* 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 15.

{¶ 31} The magistrate first determines that the commission's exercise of continuing jurisdiction in this case was based upon a clearly identified error of law on the part of the SHO. The commission determined that the SHO order made a clear mistake of law when it improperly accounted for periods of unemployment and as a result, set the average weekly wage at a reduced figure. By misapplying the law to the facts in the administrative record, the SHO committed a clear mistake of law. *State ex rel. McNea v. Indus. Comm.,* 131 Ohio St.3d 408, 2012-Ohio-1296, ¶ 10. Once the commission properly decided to exercise continuing jurisdiction and vacate the SHO's order, it then conducted a de novo review, and was charged with re-examining all aspects of the claimant's eligibility for compensation and entering an appropriate order. *State ex rel. Sheppard v. Indus. Comm.*,

139 Ohio St.3d 223, 2014-Ohio-1904, ¶ 24.

{¶ 32} The magistrate further concludes that the commission did not abuse its discretion in finding that Kelly Services' light-duty job offer to McGrue was insufficient to render McGrue ineligible for TTD upon refusal.

{¶ 33} TTD payments will cease "when work within the physical capabilities of the employee is made available by the employer." R.C. 4123.56(A). This limitation is further refined by the Ohio Administrative Code, which states that a qualifying job offer is a proposal "made in good faith, of suitable employment," Ohio Adm.Code 4121-3-32(A)(6), suitable employment consists of "work which is within the employee's physical capabilities." Ohio Adm.Code 4121-3-32(A)(3); *State ex rel. Pacheco v. Indus. Comm.*, 10th Dist. No. 15AP-1033, 2017-Ohio-8971, ¶ 27. The suitability of a light-duty job offer is a question of fact to be determined by the commission. *Pacheco* at ¶ 17. The evidence in the administrative record supports the commission's conclusion that Kelly Services' job offer did not qualify as suitable employment. Although the SHO did not have at the time of hearing the detailed record of McGrue's physical therapy schedule, the commission did have before it at the time of final hearing this evidence which supports the commission's conclusion. Dr. Malone's notes and reports throughout his treatment of McGrue stress that physical therapy was necessary. The complete evidence as heard by the commission established that McGrue's physical therapy schedule could not be reconciled with the proposed work hours. There was therefore some evidence before the commission to support its conclusion that TTD should continue because McGrue did not reject a valid offer of light-duty employment.

{¶ 34} It is therefore the magistrate's decision and recommendation that the commission properly exercised continuing jurisdiction, had some evidence before it to support its conclusion that TTD should continue, did not abuse its discretion in vacating the SHO's order and entering a new order to that effect, and the requested writ of mandamus should be denied.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).