[Cite as *State ex rel. Ottinger v. B&B Wrecking & Excavation, Inc.*, 2023-Ohio-1758.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Billy J. Ottinger, | : | |
| Relator, | : | |
| | : | No. 19AP-745 |
| v. | : | (REGULAR CALENDAR) |
| B&B Wrecking & Excavating, Inc. et al, | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on May 25, 2023

**On brief:** *Craigg E. Gould*, for relator.

**On brief:** *Dave Yost,* Attorney General, and *Andrew J. Alatis*, for respondent Industrial Commission of Ohio.

**On brief:** *Meyers, Roman, Friedberg & Lewis,* and *Steven P. Dlott*, for respondent B&B Wrecking & Excavating, Inc.

IN MANDAMUS

BOGGS, J.

{¶ 1} Relator, Billy J. Ottinger ("Ottinger"), has filed this original action requesting a writ of mandamus ordering the respondent, Industrial Commission of Ohio ("commission"), to vacate its order that granted the Ohio Bureau of Workers' Compensation's ("BWC"), motion to exercise continuing jurisdiction and to reinstate the BWC's order from February 6, 2019, which granted loss of use benefits to Ottinger. For the following reasons, we deny Ottinger's request for a writ of mandamus.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate of this court. The magistrate issued the

appended decision, including findings of fact and conclusions of law. The magistrate found that the commission did not abuse its discretion, that the commission's order was supported by some evidence, and recommended that this court deny Ottinger's petition for writ of mandamus. (Mag.'s Decision at 8-11.)

{¶ 3} On October 24, 2022, Ottinger filed his objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

## I. Facts and Procedural History

{¶ 4} On June 12, 2018, Ottinger was injured when he fell from a roof in the course of, and arising from, his employment with B&B Wrecking & Excavation, Inc. He sustained multiple injuries and was treated at Akron City Hospital immediately after his fall. Ottinger filed a claim with the BWC, which was allowed for various conditions, including "paraplegia, incomplete."

{¶ 5} On January 23, 2019, Ottinger filed a motion for compensation for the functional loss of use of both of his legs. Ottinger stated, "IN SUPPORT OF THIS MOTION, PLEASE CONSIDER THAT THE MEDICAL ON FILE AND THE FACT THAT HIS CLAIM IS ALLOWED FO[R] 'PARAPLEGIA.' " (Stipulation at 124.) BWC claim notes from January 31, 2019, indicate a nurse's review of Ottinger's motion and state that the medical evidence of Akron City Hospital from the day Ottinger was injured and the allowed condition of "paraplegia" support Ottinger's request for compensation of the functional loss of use of both of his legs.

{¶ 6} However, prior BWC claim notes from January 11, 2019, indicate that Ottinger could walk "for 200 feet, uses a walker and wheelchair for mobilization, and is

continuing physical therapy on his legs with a goal of returning to work." (Mag.'s Decision at 2.)

{¶ 7}   On February 4, 2019, the BWC granted Ottinger's request for compensation for the functional loss of use of both legs based upon Ottinger's motion, the June 12, 2018, emergency room report, and the medical documentation in the claim. On February 6, 2019, the BWC issued an order vacating its February 4, 2019 order, and modifying the order by changing only the period of the award.

{¶ 8}   On March 21, 2019, the BWC filed a motion requesting the commission to exercise continuing jurisdiction under R.C. 4123.52, arguing that there was a clear mistake of law, mistake of fact, and clerical error in the BWC's order granting Ottinger's motion. The BWC asked the commission to vacate the February 6, 2019 order, and to deny Ottinger's request for loss of use compensation.

{¶ 9}   A district hearing officer ("DHO"), issued an order on April 27, 2019, granting the BWC's motion to vacate the February 6, 2019 order based on the hearing officer finding a clear mistake of fact, mistake of law, and error by an inferior tribunal. In discussing the mistake of fact by the administrator in granting Ottinger's motion for loss of use compensation, the DHO noted an incorrect presumption that Ottinger's claim had been allowed for "paraplegia" and the existence of contradictory evidence that Ottinger was able to stand and ambulate with a walker. The DHO found the administrator made a mistake of law by granting Ottinger's motion for loss of use compensation in the face of evidence that Ottinger retained some use of his legs.

{¶ 10}  On August 6, 2019, a staff hearing officer ("SHO"), affirmed the DHO's order. The SHO stated that the February 6, 2019 order was based on a condition—paraplegia— that was not allowed in Ottinger's claim. The SHO went on to find, based on the medical

evidence, that Ottinger had failed to demonstrate a loss of use of both legs. Ottinger filed an appeal with the commission which the commission refused on September 10, 2019. Having exhausted his administrative remedies, Ottinger filed his complaint for a writ of mandamus in this court.

**{¶ 11}** The magistrate found that there was "no abuse of discretion, and the commission's order was supported by some evidence. The commission identified the following two mistakes of fact by the BWC: (1) the incorrect diagnoses of paraplegia instead of paraplegia, incomplete; and (2) there was evidence on file prior to and subsequent to the issuance of the order of claimant's ability to stand and ambulate independently with a wheeled walker, which is inconsistent with a loss of use award. The commission identified the mistake of law as being that the award of the loss of use of the right and left legs was inappropriate because claimant demonstrated some ability or function of lower extremities. These determinations were not an abuse of discretion and were supported by some evidence." (Mag.'s Decision at 8.)

**{¶ 12}** In response to the magistrate's decision, Ottinger submitted the following objections:

> (1) The Magistrate erred in finding that the Industrial Commission of Ohio cited to two (2) mistakes of fact in its Order when it exercised continuing jurisdiction.
>
> (2) The Magistrate, like the commission, is not a medical expert and cannot make medical determinations regarding different conditions.
>
> (3) The Magistrate erred in finding that the Industrial Commission failed to acknowledge that the BWC's order was also based on other "medical documentation in the file."

**II. Analysis**

{¶ 13} To be entitled to relief in mandamus, Ottinger must establish that he has a clear legal right to relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). To do so, Ottinger must demonstrate that the commission abused its discretion and, "in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packaging, Inc.*, 31 Ohio St.3d 18, 20 (1987). Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). To be entitled to a writ of mandamus, Ottinger must show that the commission's decision is not supported by some evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as the fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 14} Here, Ottinger challenges the commission's exercise of continuing jurisdiction under R.C. 4123.52 as an abuse of discretion. R.C. 4123.52(A) provides, "The jurisdiction of the industrial commission over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." "This continuing jurisdiction is limited and may be invoked only when there is evidence of '(1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by [an] inferior

tribunal.' " *State ex rel. Neitzelt v. Indus. Comm.*, 160 Ohio St.3d 175, 2020-Ohio-1453, ¶ 11, quoting *State ex rel. Nicholls v. Indus. Comm.,* 81 Ohio St.3d 454, 458-59 (1998).

{¶ 15} In his first objection, Ottinger objects to the magistrate's statement that the commission identified two mistakes of fact in support of its exercise of continuing jurisdiction. Ottinger concedes that, as found by the magistrate, the commission justified its exercise of continuing jurisdiction based on the mistake of fact that Ottinger's claim had been allowed for paraplegia. So essentially, Ottinger contests the magistrate's statement that the commission identified an additional factual mistake based on the existence of evidence of Ottinger's ability to stand and walk with a walker. We are not persuaded by Ottinger's argument that the magistrate's second identified mistake of fact undermines the magistrate's decision.

{¶ 16} The DHO's April 27, 2019 order considered the allowed claim of "paraplegia, incomplete" and the fact that Ottinger can ambulate in tandem. It found, "the mistake of fact by the Administrator in issuing the February 2, 2019 order approving the scheduled loss of the right and left leg was based upon the incorrect diagnoses of paraplegia and further that there was evidence on file prior to and subsequent to the issuance of the order of [Ottinger's] ability to stand and ambulate independently with a wheeled walker." (Stipulation at 154.) In that sense, the DHO incorporated both prongs of what the magistrate has identified as mistakes of fact into a single mistake by the Administrator. In substance, however, there is no difference.

{¶ 17} The SHO's August 6, 2019 decision follows the same analysis and reasoning that the claim did not allow for "paraplegia" but only for "paraplegia, incomplete." The August 6, 2019 decision also found that Ottinger "has failed to establish that he currently has a scheduled loss of use of both lower extremities." (Stipulation at 217.) Even though

the SHO did not specifically address the undisputed evidence that Ottinger retains some use of his legs as a justification for the invocation of continuing jurisdiction, it clearly adopted the DHO's finding of a mistake regarding whether Ottinger established that he currently has a complete and permanent loss of use of both legs.

{¶ 18} While Ottinger is correct that the mistake of fact identified by the commission for its exercise of continuing jurisdiction was the allowed claim of "paraplegia, incomplete" rather than "paraplegia," the commission also clearly looked to the fact that Ottinger has some use of his legs to support its exercise of continuing jurisdiction. The issue of whether Ottinger can ambulate is so closely intertwined with the allowed claim of "paraplegia, incomplete" that the former supports the latter.

{¶ 19} Ultimately, the commission found at least one clear mistake of fact that is supported by some evidence, and we do not find an abuse of discretion in its exercise of continuing jurisdiction. A single mistake of fact or mistake of law is all that is needed to justify the commission's exercise of continuing jurisdiction. As long as some medical evidence supports the commission's findings, those findings will not be disturbed. *State ex rel. Pritt v. Indus Comm.*, 10th Dist. No. 17AP-98, 2018-Ohio-1066, ¶ 13. Even if there is "conflicting evidence before the commission, this court does not re-weigh the evidence in mandamus." *State ex rel. Cincinnati, Inc. v. Lowe,* 10th Dist. No. 04AP-241, 2005-Ohio-516, ¶ 6. Here the commission had ample evidence in the record, which supported the commission's finding that the Administrator granted Ottinger's motion based on the factual mistake that his claim had been allowed for "paraplegia," not "paraplegia, incomplete," in order to properly exercise continuing jurisdiction. And whether or not the commission considered it as a justification for exercising continuing jurisdiction or as justification for vacating the BWC order thereafter, there is likewise some evidence in the record to support

the commission's determination that the Administrator mistakenly determined that Ottinger was entitled to loss of use compensation when faced with evidence that Ottinger was able to stand and walk with a walker. The commission, as the magistrate's analysis confirms, considered Ottinger's ability to ambulate as inconsistent with a claim of "paraplegia." For these reasons, we overrule Ottinger's first objection.

{¶ 20} We also disagree with and overrule Ottinger's second objection, in which he argues that the magistrate and the commission improperly acted as medical experts by distinguishing between the allowed condition of "paraplegia, incomplete" and the condition of "paraplegia" which was not allowed in the claim. The magistrate, like the commission, properly looked to the allowed conditions in the claim and found that "paraplegia, incomplete" did not support loss of use compensation for Ottinger. While the commission and magistrate both noted that Ottinger has use of his legs based upon medical evidence in the record, this does not amount to them standing in as medical experts.

{¶ 21} Finally, we are also not persuaded by Ottinger's third objection. Ottinger argues that the BWC order granting loss of use compensation was based not just on Ottinger's motion and the medical records from Ottinger's initial hospital visit after the injury, but also on the other "medical documentation in the claim." (Oct. 24, 2022 Objs. at 13.) Ottinger argues that the commission and the magistrate should not have reweighed that evidence. Rather, he maintains that the magistrate should have assumed from the February 6, 2019 order that the Administrator considered all the medical records, including the records undisputedly showing that Ottinger could stand and walk short distances with a walker, and still concluded that Ottinger was entitled to compensation for the complete loss of use of his legs. However, Ottinger misses the point. Neither the commission nor the magistrate reweighed the evidence in the record. In vacating the February 6, 2019 order

granting Ottinger's motion for compensation for the loss of use of his legs, the commission corrected a clear mistake of fact and law. The medical evidence that existed showed that Ottinger could stand and ambulate, consistent with the allowed condition of "paraplegia, incomplete." To grant Ottinger's motion in the face of that evidence was a clear mistake of law because Ottinger did not establish that he suffers a complete and permanent loss of use of his legs. We therefore overrule Ottinger's third objection.

### III. Conclusion

{¶ 22} Following an independent review of this matter, we find the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.

{¶ 23} In accordance with the magistrate's decision, we deny Ottinger's request for a writ of mandamus.

*Objections overruled; writ denied.*

DORRIAN and JAMISON, JJ., concur.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Billy J. Ottinger, | : | |
| Relator, | : | |
| v. | : | No. 19AP-745 |
| B&B Wrecking & Excavating, Inc. et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on October 10, 2022

*Craigg E. Gould,* for relator.

*Meyers, Roman, Friedberg & Lewis,* and *Steven P. Dlott,* for respondent B & B Wrecking & Excavating, Inc.

*Dave Yost,* Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 24}  Relator Billy J. Ottinger ("claimant") has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that granted the motion for continuing jurisdiction filed by the Ohio Bureau of Workers' Compensation ("BWC") and to reinstate the BWC's February 6, 2019, order that granted loss of use compensation to claimant pursuant to R.C. 4123.57(B).

Findings of Fact:

{¶ 25} 1. Claimant was injured on June 12, 2018, in the course of and arising from his employment with respondent B&B Wrecking & Excavation, Inc. ("employer") when he fell from a roof. Claimant received treatment at Akron City Hospital immediately after the injury.

{¶ 26} 2. Claimant filed a claim with the BWC, and the claim was allowed for neuromuscular dysfunction of bladder, unspecified; acute deep vein thrombosis of gastrocnemius vein right lower leg; concussion; incomplete spinal cord injury, lumbar; vertebral body burst fracture with posterior displacement L1; scalp laceration; nondisplaced inferior endplate thoracic fracture T12; neurogenic bowel, not elsewhere classified; paraplegia, incomplete; erectile dysfunction; other osteoporosis without current pathological fracture, lumbar; other osteoporosis without current pathological fracture; bilateral hip; and other osteoporosis without current pathological fracture, bilateral knees.

{¶ 27} 3. According to the January 11, 2019, BWC claim notes, the physical therapy records indicated that claimant can ambulate for 200 feet, uses a walker and wheelchair for mobilization, and is continuing physical therapy on his legs with a goal of returning to work.

{¶ 28} 4. On January 23, 2019, claimant filed a C-86 motion for compensation for the functional loss of use of both of his lower extremities. The motion indicates the following: "IN SUPPORT OF THIS MOTION, PLEASE CONSIDER THAT THE MEDICAL ON FILE AND THE FACT THAT HIS CLAIM IS ALLOWED F[OR] 'PARAPLEGIA.' "

{¶ 29} 5. According to the January 31, 2019, BWC claim notes, a nurse review of claimant's C-86 motion indicated that the medical evidence from Akron City Hospital on June 12, 2018, and the allowed condition of paraplegia support the request for compensation for the functional loss of use of both of claimant's lower extremities. The nurse defined paraplegia as paralysis of the legs and lower body.

{¶ 30} 6. On February 4, 2019, the BWC issued an order granting claimant's request for loss of use compensation for the functional loss of use of both of his lower extremities, awarding $186,400 for each leg. The order was based upon the C-86 motion, the June 12, 2018, emergency room report, and the medical documentation in the claim.

{¶ 31} 7. On February 6, 2019, the BWC issued an order vacating its order of February 4, 2019, modifying only the period of the award.

{¶ 32}  8. On March 5, 2019, based upon the BWC order finding a loss of use of both extremities, claimant filed a motion requesting permanent total disability ("PTD") compensation.

{¶ 33}  9. On March 15, 2019, the staff hearing officer ("SHO") issued a tentative order granting claimant's request for PTD from June 12, 2018, and to continue. The BWC filed an objection to the SHO's tentative order, asserting there is insufficient medical documentation that claimant's request for statutory PTD rises to the level of a permanent and total loss of use.

{¶ 34}  10. On March 21, 2019, the BWC filed a motion requesting that the commission exercise its continuing jurisdiction, pursuant to R.C. 4123.52, based on a clear mistake of law, mistake of fact and clerical error, and vacate the BWC's February 6, 2019, order granting claimant loss of use compensation. The BWC asserted the following: (1) the claim is only allowed for paraplegia, incomplete, and not paraplegia; (2) the order was based on a January 31, 2019, nurse review that found loss of use based on the allowance of paraplegia and the medical records on the date of injury; (3) after the date of injury, claimant had emergency surgery and extensive physical therapy; (4) claimant has not been found to have reached maximum medical improvement ("MMI"); (5) there are physical therapy records from January 10, 2019, that indicate that claimant has regained the ability to walk; and (6) the BWC order should be vacated and the request for loss of use award for the right and left leg should be denied due to lack of medical evidence to support loss of use.

{¶ 35}  11. After a hearing before a district hearing officer ("DHO"), the DHO issued an order on April 27, 2019, finding the following: (1) the DHO invokes the continuing jurisdiction based upon a clear mistake of fact, mistake of law, and error in granting the scheduled loss of use of the right and left leg; (2) the BWC's February 6, 2019, order granted loss of use of both the right and left legs based upon the June 12, 2018, emergency room record and the false assumption that the claim was recognized for paraplegia; (3) the initial allowance in this claim included, in part, the condition of paraplegia, incomplete; (4) the medical evidence on file demonstrates that claimant has progressed through appropriate rehabilitation and has some use of the right and left leg as documented by treatment records from Allied Health Physical Therapy dated January 10, 2019, through April 2, 2019; (5) the physical therapy records document progression of claimant's standing and ambulation with

assistance and continued therapy goals of increased walking, which is inconsistent with the award for the loss of use of the right and left legs; (6) while claimant sustained a significant injury, the loss of use of both legs as awarded by the BWC was premature, as it did not appropriately consider all the medical evidence; (7) the nurse review only considered the medical evidence and exam findings from Akron City Hospital on June 12, 2018, and presumed the incorrect allowance of paraplegia per the January 31, 2019, BWC notes in recommending the loss of use of both legs; (8) the mistake of fact by the BWC in issuing the February 6, 2019, order was based upon the incorrect diagnoses of paraplegia, and the fact that there was evidence on file prior to and subsequent to the issuance of the order of claimant's ability to stand and ambulate independently with a wheeled walker; (9) the mistake of law was that the award of the loss of use of the right and left legs is inappropriate when an injured worker demonstrates some ability or function of lower extremities; and (10) the DHO vacates the February 6, 2019, order of the BWC and denies the January 23, 2019, C-86 motion requesting compensation for the loss of use of both lower extremities. Claimant appealed.

{¶ 36} 12. On July 8, 2019, Michael Harris, M.D., performed an independent medical examination ("IME"), in which he found the following: (1) the allowed injuries have not resulted in a total, permanent loss of use of the left and right legs to such a degree that the affected body parts are useless for all practical purposes; (2) claimant is ambulatory now; (3) claimant ambulates independently with a walker for short distances, which certainly can be helpful going from his bed to a bathroom, where he can stand and void; and (4) while claimant does have an incomplete spinal cord injury, he does not have complete loss of use of his left and right lower extremities.

{¶ 37} 13. After a hearing before an SHO, the SHO issued an order on August 6, 2019, affirming the DHO's order and finding the following: (1) the BWC has established a mistake of fact, mistake of law, and clerical error, which enables the commission to exercise continuing jurisdiction; (2) the February 6, 2019, BWC order was based on a mistake of fact and law, the order is vacated, and claimant's previous request for a scheduled loss of use of the right and left legs is denied; (3) the BWC's February 6, 2019, order was based on a condition that was not, and is not allowed in the claim; (4) the claim is allowed for paraplegia, incomplete, and claimant's own motion for the requested scheduled loss of use

of both lower extremities incorrectly asserts that the claim is allowed for paraplegia; (5) furthermore, the nurse's review, as documented in the BWC's notes on file, was also based on incorrect information; specifically, the January 31, 2019, BWC note indicates that the Akron City Hospital medical evidence and examine findings from June 12, 2018, and the allowed condition in the claim paraplegia—defined as paralysis of the legs and lower body—supports the request for compensation for the functional loss of use of both his lower extremities; (6) as previously indicated, relative to the medical term paraplegia, this claim is allowed for paraplegia, incomplete, and not paraplegia, with the latter diagnosis leading to the conclusion that claimant has complete paralysis; (7) furthermore, from a medical standpoint, clamant has failed to establish that he currently has a scheduled loss of use of both lower extremities; (8) the physical therapy notes do document progress relative to his use and function of his lower extremities; (9) at the hearing, claimant testified that he is able to use both feet/legs in order to drive a car; (10) although he must use a walker during his daily activities, and his functioning is limited, he has not established a total loss of use; (11) the SHO relies upon the report of Dr. Harris, who concludes that the allowed injuries have not resulted in a total, permanent loss of use of the left and right legs to such a degree that the affected body parts are useless for all practical purposes; (12) Dr. Harris notes that claimant is ambulatory, as he ambulates independently with a walker for short distances; and (13) Dr. Harris notes that claimant does have an incomplete spinal cord injury and remains quite weak, but he does not have a complete loss of use of his left and right lower extremities. Claimant appealed, but the commission refused the appeal on September 10, 2019.

{¶ 38} 14. On August 6, 2019, a different SHO issued an order denying claimant's request for PTD, finding that claimant's PTD request was based on a finding of loss of use of both legs as a result of the BWC's February 6, 2019, order; however, the February 6, 2019, order has been vacated. Claimant appealed, but the commission refused the appeal on September 10, 2019.

{¶ 39} 15. On October 30, 2019, claimant filed a complaint for writ of mandamus, requesting that this court order the commission to vacate its order that granted the motion for continuing jurisdiction filed by the BWC and to reinstate the BWC's February 6, 2019, order that granted loss of use compensation to claimant.

Conclusions of Law and Discussion:

{¶ 40} The magistrate recommends that this court deny claimant's request for a writ of mandamus.

{¶ 41} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 42} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 43} R.C. 4123.57(B) authorizes scheduled compensation to a claimant for the total loss of a body part, such as the total loss of an arm or leg. "Loss" within the meaning of the statute includes not only amputation, but also the loss of use of the affected body part. *State ex rel. Wyrick v. Indus. Comm.*, 138 Ohio St.3d 465, 2014-Ohio-541, ¶ 10, citing *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364. An injured worker claiming loss of use under R.C. 4123.57(B) bears the burden of showing that the loss of use is complete and permanent. *State ex rel. Carter v. Indus. Comm.*, 10th Dist. No. 09AP-30, 2009-Ohio-5547.

{¶ 44} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A) contains a clear and broad grant of continuing jurisdiction to the commission. *State ex rel. Neitzelt v. Indus. Comm.*, 160 Ohio St.3d 175, 2020-Ohio-1453, ¶ 15. However, that jurisdiction is conditioned on specific criteria: (1) new and changed circumstances, (2) fraud, (3) clear

mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459 (1998).

{¶ 45} Claimant asserts that the commission abused its discretion by exercising continuing jurisdiction because no valid legal basis for reconsideration existed to vacate an otherwise legal order from the BWC. Claimant presents four arguments in support. First, claimant argues that the commission did not have continuing jurisdiction because the BWC order was not appealed. Claimant urges that uncertainty and confusion will result if a BWC order can be vacated weeks, months, or years later because either the claimant, employer, or BWC decide it was incorrectly decided. Claimant contends that continuing jurisdiction should only be granted when an order is not supported by evidence that is not delineated on its face, and requests for continuing jurisdiction should not be granted when it seeks a reweighing of evidence, which was the case here.

{¶ 46} Second, claimant argues that the BWC order was supported by some evidence, and the commission improperly searched for evidence outside the BWC's order to support its imposition of continuing jurisdiction. Claimant asserts that the BWC's order granted loss of use benefits based on the allowed conditions in his claim and correctly listed the allowed conditions, and it did not contain any reference to anything the nurse did or did not review or anything contained in the BWC's C-86 motion requesting continuing jurisdiction. Claimant contends that the commission went outside the four corners of the BWC's order to justify the imposition of continuing jurisdiction, but evidentiary review is limited to the evidence and reasoning identified in the order. Claimant asserts that the commission's finding that the BWC was acting under the improper assumption that the claim was allowed for paraplegia, complete, and not incomplete, is not evident in the order and is merely conjecture.

{¶ 47} Third, claimant argues that the commission abused its discretion when it granted continuing jurisdiction because the BWC order contained no clear mistake of law or fact, asserting the following: (1) with regard to the mistake of fact, although both hearing officers found that the BWC made a false assumption regarding the allowed conditions, this assumption is pure conjecture, and the BWC's order lists only the allowed conditions; (2) with regard to the mistake of law, R.C. 4123.57(B) does not bar compensation for loss of limb when there is a light residual utility in the limb; (3) the BWC issued its order eight

months after the injury with complete knowledge that the paraplegia was incomplete, as all of the medical evidence in the claim file shows that claimant could barely use his legs; (4) although the BWC argues that some physical therapy notes were not considered, this is impossible to know; although the order does not mention them, not all evidence needs to be cited; (5) the evidence that purportedly supported the exercise of continuing jurisdiction—claimant's January 10, 2019, physical therapy notes—was readily discoverable before the BWC awarded the loss of use award, and there was no new and changed circumstances; and (6) it was not the nurse who issued the BWC's orders but the claim service specialist who is assigned to the claim and who intimately knows the extent of claimant's injury and what has been transpiring medically.

**{¶ 48}** Fourth, claimant argues that the commission's finding that the little use he has of his legs is "functional use" is contrary to the medical records. Claimant asserts that the commission erroneously found the nurse reviewer reviewed only the emergency room notes, given the BWC indicated that the loss of use award relied upon the emergency room records and the medical documentation in the claim. Claimant points out that the nurse reviewer did not testify at either hearing, so the hearing officers have no idea what medical records were actually reviewed. Claimant also points out that the medical records in the case reveal that claimant was unable to functionally ambulate more than a short distance and was dependent upon a wheelchair or walker. Thus, claimant asserts, although he had some residual function in his legs, he still suffered a loss of use of his legs.

**{¶ 49}** After a review of the record and claimant's arguments, the magistrate finds no abuse of discretion, and the commission's order was supported by some evidence. The commission identified the following two mistakes of fact by the BWC: (1) the incorrect diagnoses of paraplegia instead of paraplegia, incomplete; and (2) there was evidence on file prior to and subsequent to the issuance of the order of claimant's ability to stand and ambulate independently with a wheeled walker, which is inconsistent with a loss of use award. The commission identified the mistake of law as being that the award of the loss of use of the right and left legs was inappropriate because claimant demonstrated some ability or function of lower extremities. These determinations were not an abuse of discretion and were supported by some evidence.

{¶ 50} Initially, the magistrate finds claimant's public-policy arguments without merit, as they have no basis in law, and the statutory law regarding the exercising of continuing jurisdiction controls the matter. Presumably the General Assembly took into account the public-policy considerations behind the continuing jurisdiction scheme, and arguments, in this respect, are best directed at the General Assembly. Public-policy arguments aside, the commission here did not abuse its discretion in asserting continuing jurisdiction. If the BWC, in fact, made a determination based upon the mistaken belief that paraplegia—and not paraplegia, incomplete—was the allowed condition, then such would constitute a mistake of fact. It is undisputed that non-allowed conditions cannot be used to advance or defeat a claim for compensation. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993). Therefore, the issue in this case becomes whether the BWC committed a "clear" mistake of fact. Although the BWC's orders do not specifically indicate that the orders were based upon the mistaken belief that the allowed condition was paraplegia, the orders do indicate that they were based on the C-86 motion, and the June 12, 2018, emergency room report. The January 23, 2019, C-86 motion wrongly indicates that the claim was allowed for paraplegia. Furthermore, the January 31, 2019, nurse review of claimant's C-86 motion specifically indicates that the medical evidence from Akron City Hospital on June 12, 2018, and the allowed condition of paraplegia support the request for compensation. The C-86 motion and BWC claim notes clearly misidentify the allowed condition, and it was not pure conjecture for the commission to recognize that the BWC relied upon a C-86 motion and most assuredly its own claim notes that both misidentified the allowed condition in finding a loss of use of both legs. These circumstances are sufficiently clear to find that the BWC made a clear mistake of fact.

{¶ 51} Similarly, the commission's continuing-jurisdiction determination as to the BWC's mistake of fact regarding claimant's ability to stand and ambulate was not an abuse of discretion. In making this determination, the commission found that the BWC nurse reviewed only the medical evidence and exam findings from Akron City Hospital on June 12, 2018, and failed to consider the other evidence in the file showing claimant's ability to stand and ambulate independently with a wheeled walker. Limiting its review to the records from Akron City Hospital on June 12, 2018, the date of the injury, resulted in a clear mistake of fact that claimant could not ambulate. In fact, the medical evidence included in

the record, including those summarized in the BWC's own January 11, 2019, claim notes, indicate that the physical therapy notes show that claimant can ambulate for 200 feet and is continuing physical therapy on his legs. Thus, the magistrate finds no abuse of discretion when the commission found a mistake of fact regarding the BWC's finding related to claimant's ambulation.

{¶ 52} With regard to the mistake of law, the commission found that because it concluded there existed in the record evidence ignored by the BWC that claimant could stand and ambulate and was undergoing further therapy to increase his ambulation, it was a mistake of law for the BWC to conclude claimant was entitled to compensation for loss of use of his legs. Given the magistrate's above findings, it was not an abuse of discretion for the commission to conclude such. There existed clear evidence in the record subsequent to the date-of-injury emergency room report from Akron City Hospital that claimant eventually began to regain some ambulation with and without a walker and was continuing to improve with physical therapy. Given the existence of this evidence, the commission could find the BWC made a mistake of law in granting a loss of use of both legs.

{¶ 53} Once the commission properly found that it could exercise continuing jurisdiction based upon a mistake of fact and law, the commission was able to reexamine all aspects of the case and reevaluate the evidence regarding the loss-of-use benefits claim. *See State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, ¶ 24 (finding once the commission exercises continuing jurisdiction and vacates an order it is required to reexamine all facets of claimant's eligibility for compensation). The magistrate has already discussed the evidence in the record that showed claimant's allowed claim was for paraplegia, incomplete, and not paraplegia. As for the evidence in the record related to the claimant's ability to ambulate, the magistrate finds there was some evidence to support the commission's finding that claimant's ability to ambulate and his improvement with continuing physical therapy is inconsistent with an award for the loss of use of the right and left legs. The commission relied upon the July 8, 2019, IME of Dr. Harris, who opined that the allowed injuries have not resulted in a total, permanent loss of use of the left and right legs to such a degree that the affected body parts are useless for all practical purposes; claimant is ambulatory now; claimant ambulates independently with a walker for short distances, which certainly can be helpful going from his bed to a bathroom, where he can

stand and void; and while claimant does have an incomplete spinal cord injury, he does not have complete loss of use of his left and right lower extremities. Dr. Harris's IME report provides some evidence to support the commission's denial of claimant's request for compensation for loss of use of both legs, and the commission's decision was not an abuse of discretion.

{¶ 54} Accordingly, it is the magistrate's decision that this court should deny claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).